IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | |
|---|---|
| A3 Artists Agency, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>Night Media, Inc. & Ezra Cooperstein,<br><br>    *Defendants.* | §<br>§<br>§<br>§<br>§  CIV. ACT. NO. 1:23-cv-00715<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff A3 Artists Agency, LLC ("A3") files this Original Complaint against Defendants Night Media, Inc. ("Night") and Ezra Cooperstein ("Cooperstein") seeking damages for tortious interference with A3's existing contracts and damages and permanent injunctive relief arising out of Night's violations of California Business and Professions Code Section 17200. In support of this Complaint, A3 respectfully shows the Court as follows:

### I.   Parties

1.   Defendant Night Media, Inc. is a Delaware corporation with its principal place of business at 1108 Lavaca Street, Suite 110, Austin, Texas 78701. Accordingly, Night is a citizen of the States of Delaware and Texas. Night may be served by delivering a copy of this Complaint to its registered agent, Reed Duchscher, 2949 Parkwood Blvd., #445, Frisco, TX 75034.

2.   Defendant Ezra Cooperstein is a Citizen of Texas.

3.   Plaintiff A3 Artists Agency, LLC is a citizen of the States of New York and California and may be contacted through the undersigned attorneys.

### II.   Jurisdiction and Venue

4.   A3 incorporates the previous paragraphs as if fully set forth herein.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and it is between citizens of different States. There is complete diversity because Cooperstein is a citizen of Texas, Night is a citizen of Delaware and Texas, and none of A3's members or parents' members are citizens of Texas or Delaware. A3 is a limited liability company whose sole member is AAA ABC Acquisition, LLC. The members of AAA ABC Acquisition, LLC are Brian Cho, a citizen of California, Todd Quinn, a citizen of California, Robert Atterman, a citizen of New York, and Superbrands Capital, LLC whose sole member is Adam Bold, a citizen of California. Furthermore, Defendants' actions have caused A3 damages far in excess of $75,000 including lost revenue, goodwill, and business opportunities.

6. Venue is proper in this district because Night's principal place of business is located within this district.

### III.   Facts and Overview

**A. Night operates as an unlicensed talent agency in violation of California's Talent Agency Act.**

7. A3 is an elite talent agency representing some of the most creative artists in movies, television, literature, theater, commercials, digital media, voiceover work, and other areas. Talent agencies in California are regulated by California Labor Code Sections 1700 through 1700.47, known as the Talent Agency Act. The Talent Agency Act defines a talent agency as a person or corporation who "engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists." Talent agencies may also "counsel or direct artists in the development of their professional careers." A3 performs these roles at the highest level.

8. Section 1700.5 of the Talent Agency Act states that "[n]o person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner." Section 1700.5 further requires the licensee to post the license in a conspicuous place in its office and to refer to the license number "in any advertisement for the purpose of the solicitation of talent for the talent agency." A3 maintains the required license and complies with all other obligations of the Talent Agency Act, including, but not limited to: Section 1700.15 (requiring talent agencies to post a bond of $50,000 with the Labor Commissioner prior to obtaining a license); Section 1700.23 (requiring talent agencies' forms of contracts for services to be approved by the Labor Commissioner); 1700.24 (requiring talent agencies to file with the Labor Commissioner a schedule of fees to be charged and collected); and 1700.25 (requiring talent agencies to maintain a trust account for disbursement of artist payments).

9. A3's business is conducted primarily through its talent agents. A3 spends considerable time training and supporting its agents so that the agents can provide the best possible service to A3's clients. To protect the interests of both A3 and its artists, A3 and its agents enter employment contracts defining the term of employment as well as other obligations and responsibilities of the agent during, and for a reasonable period after, their employment with A3.

10. According to its website, Night purports to "help[] the world's most influential artists reach their full potential as entertainers and entrepreneurs." As a management firm, *i.e.,* a firm that is supposed to advise, but not procure employment for, clients, Night is not licensed as a talent agency pursuant to the Talent Agency Act. On information and belief, Night does not comply with the Talent Agency Act's requirements for bonding (1700.15), approval of contract forms (1700.23), filing of fee schedules (1700.24) or maintenance of a trust fund account for artist disbursements (1700.25).

11. In 2020, Ezra Cooperstein joined Night as its President and he remains in that role today. According to media publications, Cooperstein oversees Night's business operations, including strategy and business development.

12. Despite the fact it does not have a talent agency license as required by California law, Night operates as both a management firm and an unlicensed talent agency, procuring employment for talent in the film industry and holding itself out to the public as a one-stop shop for artists' agency and management needs. Because Night operates as an unlicensed talent agency, it does not comply with the regulations of the Talent Agency Act designed to protect the artists and members of the public related to the operation of a talent agency. Night's business model is to attract talent by promising to perform both agency and management roles and operating free from the constraints imposed by the Talent Agency Act's regulations. This allows Night an unlawful competitive advantage in terms of its profitability and the compensation it can pay agent employees when compared to licensed talent agencies, including A3.

13. Night's business model—which violates the Talent Agency Act—has caused artists and talent agents contracted to A3 to terminate their relationship with A3, and continues to give Night an unfair advantage in the talent representation industry.

**B. Night and Cooperstein interfere with A3's existing contracts.**

14. In November 2019, A3 entered into an Employment Agreement with talent agent Adam Loria ("Loria"). The initial term of Loria's Employment Agreement was one year, with A3 having four dependent unilateral options to renew Loria's services for additional one-year terms. In other words, Loria agreed that A3 would have the option to employ him through November 2024.

15. In January 2023, A3 promoted Loria to Senior Agent. Along with his promotion, Loria received a substantial pay increase. A3 treated Loria exceptionally well.

16. After having moved through the ranks and after receiving training as an agent and a substantial pay increase from A3, Loria was courted by Cooperstein and Night, with Cooperstein personally soliciting Loria to leave A3 and join Night. On information and belief, Night knew that Loria was bound by an employment agreement with A3. Indeed, this was not an isolated incident as Cooperstein and Night made similar solicitations of at least one employee at A3's sister entity.

17. Despite A3 promoting Loria and substantially increasing his salary, in March 2023, out of the blue, Loria made unfounded allegations regarding his work environment at A3. Taking Loria's complaints seriously, A3 conducted an internal investigation. At the same time, Loria took a medical leave of absence from work.

18. On April 13, 2023, despite his contractual obligations, Loria, through his lawyer, surprised A3 by asserting a concocted claim that Loria had been constructively discharged and he would no longer report to work. A3, in fact, had not terminated Loria. Loria had not attempted to resign his employment. Notwithstanding his baseless claim of constructive discharge, Loria remained employed by A3 and A3 offered to address the issues raised in his lawyer's letter. In any event, Loria remains under contract with A3 pursuant to his Employment Agreement, with A3 having the option to continue that relationship through November 2024. Because Loria was claiming he was disabled from working for A3, but apparently only disabled with respect to working for A3, A3 placed Loria on leave and offered to assist him to get the care that he needed. It also continued to pay Loria his $215,000 per year base salary while he was on this leave.

19. While Loria was on his paid leave from A3, on May 17, 2023, Night's president, Ezra Cooperstein, contacted A3 in an attempt to hire Loria away from A3. Cooperstein offered not to raid any other A3 employees in exchange for A3 resolving the Loria situation in a way that

would allow Loria to work for Night. Despite Cooperstein's overtures, A3 declined to terminate Loria's Employment Agreement.

20. On the evening of June 12, 2023, again in contravention of his Employment Agreement with A3, Loria, through counsel, purported to resign from A3. In the morning of June 14, 2023, Loria appeared on a Zoom conference with a client of A3. However, Loria represented that he was now working for Night. According to his LinkedIn profile, Loria is now the Vice President of Digital at Night Media.

21. When Loria appeared on the Zoom conference on behalf of Night, less than 36 hours after leaving A3, his appearance caused great surprise and disruption to A3's business.

22. Thus Night and Cooperstein willfully and intentionally interfered with Loria's contract with A3 and caused Loria to breach that contract. It appears that Cooperstein implemented this same playbook with at least one other A3 agent and A3 is still investigating that effort and any other efforts by Night and Cooperstein to interfere with the existing contracts of A3's agents.

23. But Night and Cooperstein's endgame was not simply to hire Loria (and other agents) away from A3—Night and Cooperstein wanted Loria to cause A3 clients to breach their contracts and follow Loria to Night. This became obvious when the assistant of a now former A3 client ("Client 1") called A3 to inform the agency that Client 1 was leaving A3 to work with Night.

24. Client 1 had a contract with A3 to act as Client 1's talent agency. But Night and Cooperstein's actions caused Client 1 to breach a contract with A3, causing A3 to lose the revenue it otherwise would have gained as a percentage of Client 1's earnings. That revenue now goes to Night.

25. In addition to lost revenue from at least one client leaving for Night, A3 has suffered, and will continue to suffer, injury to its goodwill resulting from what appears to be Night

and Cooperstein's direction for Loria to make false allegations regarding A3's work environment. A3's artists need to trust A3 and its agents, and Night—through Cooperstein—has worked to erode that trust.

26. Now, Loria works at Night and at least one A3 artist has already gone with him. This is likely due, at least in part, to Night falsely holding itself out as providing talent agency services it is not licensed to provide.

27. Night and Cooperstein intentionally interfered with Loria's Employment Agreement and caused Loria to breach that agreement. Night and Cooperstein also intentionally interfered with A3's contract with at least one of its artists, causing the artist to breach his or her contract. Finally, Night unfairly competes with A3 on an ongoing basis by operating—in violation of the Talent Agency Act—as an unlicensed talent agency, thereby undercutting the fees A3 would have otherwise earned and making Night a more attractive option for talent interested in paying a reduced fee to a one-stop management and talent agency shop.

## IV. Cause of Action Number 1 – Unfair Competition Under California Business and Professions Code Section 17200 (for damages and permanent injunction against Night)

28. A3 incorporates the previous paragraphs as if fully set forth below.

29. California Labor Code Section 1700.5 prohibits engaging or carrying on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner.

30. Night is not licensed as a talent agency under § 17.005.

31. Night has operated, and continues to operate, in violation of § 17.005 by holding itself out to the public as being capable of, and actually performing the work of a talent agency. Thus, Night is acting as an unlicensed talent agency in violation of § 17.005.

32. Night's ongoing operation as an unlicensed talent agency is a violation of California's Unfair Competition Law, Section 17200 of the California Business and Professions Code.

33. Night's ongoing operation as an unlicensed talent agency gives it an unfair advantage in the industry and causes damage to A3. Night's flouting of the licensing requirements and the regulations applicable to licensed talent agencies allows Night to pitch itself as a "one-stop shop" pretending that it provides the same security the Talent Agency Act regulations enforce for licensed agencies. Night's unlicensed model allows it to out-compete A3 for business and employee talent.

34. Furthermore, Night's ongoing violations of the Talent Agency Act are likely to mislead the public because artists will believe that Night can provide them services Night is not legally permitted to provide, *i.e.*, procuring employment.

35. Night's continuing violations have proximately caused damage to A3 in the form of (1) lost potential business from clients who may sign with Night believing it can legitimately perform the same talent agency services as A3, (2) lost revenue due to Client 1 leaving A3 for Night under the false impression that Night can provide talent agency services, and (3) loss of A3's goodwill in the industry because it appears to be unable to offer services offered by Night, despite the fact that Night is not licensed to offer those services.

36. Night should be disgorged of its ill-gotten gains and be ordered to pay A3 restitution for same.

37. Furthermore, Night should be permanently enjoined from acting as an unlicensed talent agency. Night's ongoing violations of the Talent Agency Act are causing continuing and irreparable injury to A3 for which there is no adequate remedy at law. The balance of the equities

favors A3 because an injunction requiring Night to comply with the Talent Agency Act will cause no harm to Night, whereas Night's continued violations of the Talent Agency Act will cause continued harm to A3 and the marketplace. And the grant of an injunction will not disserve the public interest because the injunction will stop Night's unfair competitive advantage and prevent it from misleading the public. Accordingly, after a trial on this matter, the Court should enjoin Night from offering services regulated by the Talent Agency Act.

### V. Cause of Action Number 2 – Tortious Interference With Loria's Existing Contract (against Night and Cooperstein)

38. A3 incorporates the previous paragraphs as if fully set forth herein.

39. A3 has a valid and enforceable Employment Agreement with Loria.

40. Upon information and belief, Night and Cooperstein know that Loria has a valid Employment Agreement with A3. Nevertheless, Night and Cooperstein willfully and intentionally interfered with Loria's Employment Agreement by directing Loria to manufacture false allegations about A3 so he could breach his Employment Agreement.

41. Night and Cooperstein's tortious interference proximately caused Loria to leave A3 and begin employment with Night. These actions proximately caused damage to A3 in the form of (1) loss of services of a contractually-bound agent, (2) loss of revenue from at least one artist who left A3 for Night, (3) loss of goodwill in the industry as a result of Loria's baseless allegations at the direction of Night and Cooperstein, and (4) loss of future revenue and/or business opportunities.

### VI. Cause of Action Number 3 – Tortious Interference with Existing Client Contracts (against Night and Cooperstein)

42. A3 incorporates the previous paragraphs as if fully set forth below.

43. Client 1 had a valid and enforceable contract with A3, pursuant to which A3 acted as Client 1's talent agency.

44. Upon information and belief, Night and Cooperstein knew that A3 had a valid talent agency contract with Client 1. Nevertheless, Night and Cooperstein willfully and intentionally interfered with Client 1's contract with A3 by directing Loria to manufacture false allegations about A3 and subsequently leave A3 for Night, with Client 1 following. Night and Cooperstein also interfered with Client 1's contract with A3 by, upon information and belief, representing to Client 1 that Night could act as both agent and manager, despite the fact Night is not a licensed talent agency as required by the Talent Agency Act.

45. Night and Cooperstein's tortious interference proximately caused Client 1 to breach a contract with A3 and become represented by Night. These actions proximately caused damage to A3 in the form of (1) loss of revenue in the form of a percentage of Client 1's earnings, and (2) loss of goodwill in the industry resulting from Client 1 leaving A3 under false pretenses and for representation by an unlicensed talent agency.

## VII.   Jury Demand

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests trial by jury.

## VIII.   Prayer

46. A3 respectfully requests that after a trial on this matter, this Court:

(1) Enter a judgment against Night for violating California Business and Professions Code § 17200 and disgorging Night of revenues collected based on such violations;

(2) Enter a judgment against Night and Cooperstein for tortiously interfering with A3's existing contracts, and awarding A3 damages in an amount to be determined at trial;

(3) Issue an injunction requiring Night to (1) cease representing to the public and its clients that Night can procure employment and perform other acts of a talent agency

subject to the Talent Agent Act, and (2) inform all of its clients that Night is not a talent agency and is not permitted to procure employment for artists; and

(4)     Grant A3 other general relief to which it is entitled.

Dated: June 21, 2023

Respectfully submitted,

**BARNES & THORNBURG LLP**

 <u>/s/ Benjamin T. Pendroff</u>
Benjamin T. Pendroff
Bar No. 24094893
bpendroff@btlaw.com
2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
(214) 258-4200 (Telephone)
(214) 258-4199 (Facsimile)

***Attorneys for Plaintiff A3 Artists Agency, LLC***