**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION**

| | | |
|---|---|---|
| **A3 Artists Agency, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIV. ACT. NO. 1:23-cv-00715** |
| | § | |
| **Night Media, Inc. & Ezra Cooperstein,** | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF A3 ARTISTS AGENCY, LLC'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE ORIGINAL COMPLAINT**</u>

Plaintiff A3 Artists Agency, LLC ("A3") files this Opposition to Defendants Night Media, Inc. and Ezra Cooperstein's Motion to Dismiss the Original Complaint.

## I.      <u>INTRODUCTION</u>

Defendants Night Media, Inc. and Ezra Cooperstein's (collectively, "Defendants") Motion to Dismiss ("Motion") is misguided under the law. A3's Complaint provides a detailed statement of the facts alleging Defendants' unlawful and tortious conduct. A3 alleges that Defendants are operating as an unlicensed talent agency under California law, which is the predicate violation of A3's claim pursuant to the unlawful prong of the California Unfair Competition Law ("UCL"). A3 further alleges that Defendants purposefully interfered with A3's contracts to poach A3's employees and clients.

Defendants incorrectly assert that dismissal is proper for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because (1) California's presumption against extraterritorial application bars A3's claims, and (2) A3 failed to exhaust the purported administrative remedies under the California Talent Agency Act ("TAA"). *See* ECF 9, Def. Mot. to Dismiss.

<u>First</u>, Defendants' Motion substantively addresses only A3's UCL claim and does not clearly articulate a basis for dismissing A3's tortious interference claims (other than to assert the tortious interference claims are "interrelated with" the UCL claim). Even so, to the extent

1

Defendants attempt to argue that A3's causes of action for tortious interference with A3's existing employee and client contracts should similarly be dismissed under the TAA, these claims are independent of Defendants' violation of the TAA. And in any event, A3's tortious interference claims do not fall under the California Labor Commissioner's (the "Commissioner") jurisdiction. Accordingly, even if the Court finds in favor of Defendants, A3's tortious interference claims remain. [1]

Second, Defendants conveniently ignore the fact that A3, a citizen of California, brought this claim against Texas Defendants (on Defendants' home turf) with respect to Defendants' actions in California. This obviously is a plaintiff's right. The heart of A3's allegations is that Defendants engaged in conduct with respect to California persons that violated California law and tortiously interfered with A3's business in California.

Lastly, Defendants' argument that A3's UCL claims are precluded by the TAA do not pass muster. The UCL is a broad statute that allows for recovery by an individual for a violation of virtually any California law by an impacted competitor. The TAA only governs employment contracts between talent and talent agencies or managers. Moreover, no adequate remedy under the TAA exists for A3's claims. In the alternative, dismissal is not a proper remedy under the TAA. Instead, a stay is appropriate where a dispute under the TAA falls within the exclusive jurisdiction of the Commissioner.

Therefore, A3 respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

## II.    ARGUMENT

### A.  DEFENDANTS' MOTION FAILS TO SUBSTANTIVELY ADDRESS A3'S TORTIOUS INTERFERENCE CLAIMS.

As an initial matter, Defendants' Motion fails to advance any articulable grounds for dismissing A3's tortious interference claims. Instead, the Motion focuses on A3's UCL claim and

---

[1] To the extent the Court finds that the tortious interference claims should also be before the Commissioner—which they should not—a stay is still appropriate pending adjudication of those claims before the Commissioner. A3 further discusses the grounds for a stay, *infra*, in the alternative of dismissing the claim(s).

then tries to contend that A3's tortious interference claims are "interrelated" and therefore should also be dismissed.

However, A3's tortious interference with contract tort claims are independent of Night Media's statutory violations. Regardless of whether Night also violated the UCL, A3 is entitled to recover against Night in tort for Night's interference with A3's contractual relations with its employees and clients.

Accordingly, under any scenario, A3's tortious interference claims should not be dismissed.

### B.  A3 HAS ALLEGED FACTS THAT DEFENDANTS' WRONGFUL CONDUCT PLAUSIBLY OCCURRED IN CALIFORNIA.

In order to survive a Rule 12(b)(6) motion, the Complaint need only state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether to grant a 12(b)(6) motion, courts must accept all factual allegations in the complaint as true and take into account all reasonable inferences in favor of the nonmoving party. *Id.* (*citing Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-24 (2007)). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. "Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

As a preliminary matter, Defendants' reliance on California's presumption against extraterritorial application is inapplicable here. The presumption applies only to occurrences outside of California. *Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1207 (2011) ("[W]e presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state ....") (internal quotations omitted). A3 does not allege that the unlawful conduct by Defendants occurred entirely outside the state of California. *See Churchill Village, L.L.C. v. General Elec. Co.*, 169 F.Supp.2d 1119, 1126–1127 (N.D.Cal. 2000) (even though "California law embodies a presumption against the extraterritorial application of its statutes," California residents injured by out-of-state conduct could assert § 17200 claims against nonresident defendants); *Yelp Inc. v.*

*Catron*, 70 F. Supp. 3d 1082, 1099 (N.D. Cal. 2014) (Yelp sufficiently stated a claim under the UCL against a nonresident defendant).

Moreover, dismissal is premature where there is an argument over what state's law applies and instead, a plaintiff should be given the opportunity to conduct discovery. *See Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 989 (S.D. Cal. 2022) ("In sum, the court finds dismissal of Plaintiff's claim would be premature at this juncture. Rather, Plaintiff should be given the opportunity through discovery to demonstrate that his claim can be litigated under the laws of California rather than Maryland.").

A3 has sufficiently alleged unlawful conduct under the UCL. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 655 (W.D. Tex. 2021) (finding that general allegations of injury at the pleading stage for UCL claims sufficient to withstand a motion to dismiss). Similarly, "[t]he allegations outlined [in the complaint] are enough at the pleadings stage to create a plausible inference that the unlawful conduct emanated from California." *Fernandez*, 593 F. Supp. 3d at 992.

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code, § 17200. "Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011).

The UCL is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes ***independently actionable***." *Id.* (emphasis added).; *see also Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1032 (E.D. Cal. 2016) (finding plaintiff adequately

alleged a claim under the unlawful prong of the UCL where the predicate violation was based on federal law); *Beasley v. Tootsie Roll Indus., Inc.*, 85 Cal. App. 5th 901, 912 (2022), review denied (Mar. 15, 2023) ("To prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California 'statute or regulation.'"). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). "Thus, '[f]ailure to comply with administrative regulations may satisfy the "unlawful" prong of the UCL.'" *Regueiro v. FCA US, LLC*, No. 222CV05521SPGMAR, 2023 WL 3564761, at *7 (C.D. Cal. May 4, 2023). "If the defendant's improper conduct constitutes independently wrongful behavior, the fact that the plaintiff is an indirect victim does not preclude recovery." *Id.* at 1183.

Moreover, the UCL "specifically grants our courts [the] power" to adjudicate claims that are unlawful, even if "the scheme is an original one." *Cel-Tech*, 20 Cal. 4th at 181. "To forestall an action under the [UCL], another provision must actually 'bar' the action or clearly permit the conduct." *Id.* "That other provision must actually bar it, however, and not merely fail to allow it." *Id.* at 184. Defendants have shown neither.

Here, A3 has sufficiently alleged that Defendants, who claim to be operating a management company, violated the TAA by actually operating as an unlicensed talent agency in California—to their own advantage and unfairly competing with A3, a duly licensed talent agency. *See* ECF 1, Compl., ¶¶ 7-8, 10, 12 (Violating the TAA "allows Night an unlawful competitive advantage in terms of its profitability and the compensation it can pay agent employees when compared to licensed talent agencies, including A3."), 13, 31-35. Even "[a] single or incidental act of procurement brings one under the TAA." *Blanks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 359 (2009); *see also Siegel v. Su*, No. 217CV07203CASSSX, 2018 WL 1393984, at *7 (C.D. Cal. Mar. 16, 2018), aff'd, 770 F. App'x 877 (9th Cir. 2019) (unlicensed talent agents with sufficient contacts in California are also subject to the TAA). While A3 concedes that the Complaint does not explicitly allege that the complained of conduct occurred, at least in part, in California, the

Court is empowered to make reasonable inferences using experience and common sense. *See Iqbal*, 556 U.S. at 663-64, 678. A3 is a California citizen and talent agency located in California. ECF 1, Compl., ⁋⁋ 3, 7. It reasonably follows that Defendants are unlawfully and unfairly competing with A3's business in California. *See Fernandez*, 593 F. Supp. 3d at 992.

Further, to the extent that Defendants claim they could not have violated the UCL since Defendants did not violate Texas law, Defendants are incorrect. A plaintiff is the master of his or her complaint and can choose the jurisdiction and/or law to bring the claims under. *See Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915) ("[T]he plaintiff is absolute master of what jurisdiction he will appeal to."); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon.").

Moreover, "a defendant who is subject to jurisdiction in California and who engages in out-of-state conduct that injures a California resident may be held liable for such conduct in a California court." *Yu v. Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 1391 (1999). "It is irrelevant whether the conduct was lawful in other states." *Id.* The Ninth Circuit has held that "a state may regulate commercial relationships 'in which at least one party is located in California.'" *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015).

Accordingly, A3 has sufficiently pled a cause of action under the UCL. Therefore, the Court should deny Defendants' Motion to Dismiss.

## C. DEFENDANTS' JURISDICTIONAL ARGUMENT IS INAPPLICABLE TO CLAIMS BY COMPETITORS.

For these same reasons, Defendants' argument that the TAA claims belong before the California Labor Commissioner is a red herring.

The TAA violations discussed in the Complaint are the predicate acts upon which the UCL claims are based. *See, Cel-Tech, supra.*, 20 Cal. 4th at 180. A3 does not assert a claim under the TAA itself; A3 asserts claims under the UCL because Night has committed the unlawful practice under the TAA. The TAA merely provides the standards for determining whether Night's conduct is "independently wrongful." *See, Korea Supply*, 29 Cal. 4th at 1159.

The fact that A3, a competitor, is an "indirect victim" of Defendants' violation of the TAA does not preclude recovery under the UCL. *Korea Supply*, 29 Cal. 4th at 1183. Indeed, the UCL is the exclusive remedy available to the indirect victims of Night's conduct including A3.

Defendants fail to make any colorable arguments that the Commissioner has jurisdiction over A3's claims for multiple reasons.

### 1. Defendants' Reliance on *Blanks*—a Contract Dispute—is Inapplicable Here.

Defendants' representation of *Blanks*, 171 Cal. App. 4th 336, fails to acknowledge the California Legislature's intention that the Commissioner examine claims under the TAA where "the ***essence*** of the parties' dispute is whether services performed were by a talent agency for an artist." *Id.* at 365 (emphasis added). While Defendants' violation of the TAA is a predicate for A3's claims under the unlawful prong of the UCL, it is not the "essence" of the dispute between the parties. Defendants' tortious interference with A3's contracts is the essence of A3's claims against Defendants.

*Blanks* is a contract dispute under the TAA between a celebrity karate champion (the talent artist) who alleged that the defendant, plaintiff's certified public accountant (the putative unlicensed talent agent), failed to adequately represent the plaintiff and negotiate on his behalf. *Blanks*, 171 Cal. App. 4th at 346-47. Plaintiff filed a civil action against the defendant seeking disgorgement of funds paid to the defendant under an invalid contract for his role as a talent agent. *Id.* at 349. The court found that, in the context of an artist seeking to recover funds paid to an unlicensed agent, any superior court proceedings should be stayed pending exhaustion of remedies before the Commissioner. *Id.* at 360.

The *Blanks* court relied on the California Supreme Court's decision in *Styne*, which involved a celebrity entertainer (talent) who invoked the TAA as an affirmative defense to his personal manager's (the putative unlicensed agent's) breach of contract claims because the manager was acting as an unlicensed talent agent. *Styne v. Stevens*, 26 Cal. 4th 42, 48 (2001). The court noted "[t]he Act is remedial; its purpose is to protect artists seeking professional employment from the abuses of talent agencies." *Id.* at 50. But what the TAA does not govern, is "transactions

other than professional employment." *Id.* at 51. The court ultimately held the applicable statute of limitations did not bar the entertainer's defensive invocation of the TAA. *Id.* at 53-54.

*Styne* makes it clear that the Commissioner does not have jurisdiction over the claims here since the TAA only governs transactions regarding professional employment. *Id.* at 51.

### 2.   The Commissioner Lacks Jurisdiction.

Despite Defendants' baseless claims, the Commissioner does not have exclusive jurisdiction over every single claim that may involve the TAA. In fact, California state and federal courts have only found exclusive jurisdiction under the TAA in matters involving breach of contract disputes between talent and talent agencies or managers. *See generally, Blanks*, 171 Cal.App.4th 336 (finding that artists seeking to recover funds from an unlicensed talent agent must first exhaust their administrative remedies), *see*, *Styne*, 26 Cal. 4th at 53 (contract dispute between a prominent entertainer and talent manager), *REO Broad. Consultants v. Martin*, 69 Cal. App. 4th 489, 494 (1999) ("The Commissioner has the authority to hear and determine various disputes, *including the validity of artists' manager-artist contracts and the liability of the parties thereunder*.").

Defendants do not cite to a single case where exclusive jurisdiction has been found to encompass a dispute between parties not in privity with each other, such as is the case here. "[T]he scope of the Labor commissioner's jurisdiction is limited by statute." *Rebolledo v. Tilly's, Inc.*, 228 Cal. App. 4th 900, 917 (2014). "The purpose of the Labor Code … is the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. In furtherance of that purpose, we liberally construe the Labor Code … to favor the protection of employees." *Camp*, 84 Cal. App. at 638.

Specifically, the TAA was "enacted for the protection of those seeking employment." *Buchwald v. Superior Ct. In & For City & Cnty. of San Francisco*, 254 Cal. App. 2d 347, 350 (Ct. App. 1967). The California Supreme Court has found that the TAA's

roots extend back to 1913, when the Legislature passed the Private Employment
Agencies Law and imposed the first licensing requirements for employment
agents. From an early time, the Legislature was concerned that those representing
aspiring artists might take advantage of them, whether by concealing conflicts of
interest when agents split fees with the venues where they booked their clients, or
by sending clients to houses of ill-repute under the guise of providing
'employment opportunities.' Exploitation of artists by representatives has
remained the Act's central concern through subsequent incarnations to the present
day.

*Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 984, as modified (Mar. 12, 2008). This is not an

employment dispute between an artist and an agent.

Lastly, public policy reasons do not mandate invoking the Commissioner's exclusive

jurisdiction here. "Requiring actions based on defensive, as well as affirmative, invocations of the

Act to first be submitted to the Commissioner 'serves the intended purpose of the doctrine of

exhaustion of administrative remedies—to reduce the burden on courts while benefiting from the

expertise of an agency particularly familiar and experienced in the area.'" *Moyeda v. Ojeda*, No.

B286301, 2019 WL 912596, at *2 (Cal. Ct. App. Feb. 25, 2019); *see also Salimi v. State Comp.*

*Ins. Fund*, 54 Cal. App. 4th 216, 220 (1997) (finding that the Workers' Compensation

Administrative Board was not created to adjudicate claims of bad faith and breach of contract or

had jurisdiction to grant the remedies sought). No such purpose is served here. The determination

of A3's claims against Defendants does not require any special expertise and is better suited for

this Court, especially since the Commissioner does not have the authority to grant the specific

relief sought by A3.

### 3.   The Exhaustion Doctrine is Inapplicable Here.

Notwithstanding the fact that the Commissioner does not have jurisdiction over A3's

claims, Defendants' invocation of the exhaustion of administrative remedies doctrine is

inapplicable here for several reasons.

First, the exhaustion doctrine does not apply when there is no administrative remedy or the

remedy is inadequate. *City of San Jose v. Operating Engineers Loc. Union No. 3*, 49 Cal. 4th 597,

609 (2010). In *Styne*, the court found that "where an ***adequate administrative remedy*** is provided

by statute, resort to that forum is a 'jurisdictional' prerequisite to judicial consideration of the claim." *Styne*, 26 Cal. 4th 42 at 53 (finding that the Commissioner had exclusive jurisdiction where a contract involving talent agency services was in dispute); *see also Hill RHF Hous. Partners, L.P. v. City of Los Angeles*, 12 Cal. 5th 458, 478 (2021). "When the relevant extrajudicial procedures are so clearly wanting, the exhaustion rule does not come into play because it has been determined there is no genuine remedy to exhaust." *Id.*

The California Supreme Court has found that the exceptions to the exhaustion doctrine are "flexible." *Id.* at 479-80. As is the case here, the doctrine does not apply where "the claimed remedy might involve 'clearly defined machinery for the submission, evaluation and resolution' of at least some 'complaints by aggrieved parties', but these procedures are deemed inadequate in relation to the specific claim or claims being advanced in a particular case." *Id.* at 480.

No adequate remedy for A3's claims exists under the TAA. While the TAA is silent in regards to available remedies for such a violation, it has been found that the TAA "permits the Labor Commissioner to void *ab initio* all contracts between the parties and order the unlicensed agent to disgorge funds earned for those services." *Blanks*, 171 Cal. App. 4th at 349; *see also Marathon Ent.*, 42 Cal. 4th at, 994-995.

None of these powers can remedy the damages and harms A3 has suffered as a result of Night's wrongdoing. There is no contract between A3 and Defendants. A3 seeks disgorgement of revenues unlawfully obtained by Defendants, money damages for Defendants' tortious interference, and an injunction against Night Media, Inc. Outside the context of employment contracts, the Commissioner has not been found to have authority under the TAA to order Defendants to pay damages or enforce the injunctive relief requested by A3.

Second, irreparable harm would result if A3 was forced to first litigate this issue before the Commissioner. The exhaustion doctrine does not apply "when irreparable harm would result by requiring exhaustion of administrative remedies before seeking judicial relief." *City of San Jose*, 49 Cal. 4th at 609. If A3 is forced to litigate its claims before the Commissioner, A3's UCL and tortious interference claims might not be subject to any equitable tolling of the applicable statute

of limitations. *See Moyeda*, 2019 WL 912596, at *4. Furthermore, any further delay in the current proceedings would permit Defendants to continue their unlawful behavior further damaging A3.

Accordingly, for all these reasons, A3 respectfully requests that this Court deny Defendants' Motion to Dismiss on the grounds that the jurisdictional pre-requisites under the TAA are inapplicable here.

### D.  IN THE ALTERNATIVE, DISMISSAL OF A3'S CLAIMS IS AN IMPROPER REMEDY.

No matter the Commissioner's jurisdiction, dismissal is an improper remedy here. *Styne* found that where a lawsuit comes within the jurisdiction of the Commissioner, "the appropriate course is simply to stay the [] court proceedings and file a 'petition to determine controversy' before the Commissioner." *Styne*, 26 Cal. 4th at 58. "[A] stay is necessary" where the equitable tolling of the administrative proceeding does not apply to all of a plaintiff's claims. *Moyeda*, 2019 WL 912596, at *4. Likewise, the equitable tolling over the TAA claims may not extend to the remainder of A3's claims and A3 would be prejudiced by dismissal. [2]

Accordingly, should the Court find that the Commissioner has exclusive jurisdiction (and it does not), to avoid any potential prejudice, A3 respectfully requests that instead of dismissing this action, the Court briefly stay this action pending a determination by the Commissioner.

### III.   LEAVE TO AMEND

In the alternative, should the Court be inclined to grant Defendants' Motion, A3 respectfully requests leave to amend the Complaint. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Normally, a plaintiff should be afforded at least one chance to remedy all identified flaws in his pleadings." *Jack v. Evonik Corp.*, No. 22-30526, 2023 WL 5359086, at *13 (5th Cir. Aug. 22, 2023). While A3 believes it has sufficiently alleged all of

---

[2] To be clear, A3 is not advocating for a stay and only asks that this Court stay the proceedings instead of dismissal. Other district courts have found that a stay is only appropriate where there is an "adequate vehicle for the complete resolution of the issues between the parties." *Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 03 CIV.6338 HB, 2003 WL 22801698, at *9 (S.D.N.Y. Nov. 24, 2003). The court declined to stay the proceedings finding that the movant failed to assert the Commissioner's jurisdiction to adjudicate the motions before the court, despite the Commissioner's exclusive jurisdiction and potential for inapposite rulings. *See id.* at *12. As previously stated, the Commissioner lacks the authority to adjudicate all of A3's claims and order the remedies prayed for by A3.

its claims, to the extent the Court believes additional information is required, A3 can and will amend the Complaint accordingly.

## IV.    CONCLUSION

Defendants' Motion to Dismiss is substantively deficient and should be denied. To the extent the Court determines the Complaint fails to sufficiently state a claim upon which relief can be granted, A3 respectfully requests leave to amend the Complaint. Furthermore, to the extent the Court finds that A3 should have exhausted administrative remedies for one or all of its claims, A3 respectfully requests that the Court stay this action pending an adjudicative determination.

Dated: September 15, 2023                    Respectfully submitted,

*/s/ Benjamin T. Pendroff*
Benjamin T. Pendroff
Texas Bar No. 24094893
bpendroff@btlaw.com
BARNES & THORNBURG LLP
2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
T: (214) 258-4200
F: (214) 258-4199

***Attorneys for A3 Artists Agency, LLC***

## CERTIFICATE OF SERVICE

I certify that, on September 15, 2023, a true and correct copy of the foregoing document was served on counsel of record via CM/ECF.

*/s/ Benjamin T. Pendroff*
Benjamin T. Pendroff